**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

UNITED STATES OF AMERICA,

      **Plaintiff**,

          **v.**                         **Criminal No.** 19-723 (FAB)

OMAR GARCÍA-NÚÑEZ,

      **Defendant.**

**OPINION AND ORDER**

BESOSA, District Judge.

This case demonstrates how a litigant's choice that shifts the applicable standard of proof can seal his fate.  At trial, the government is required to prove a criminal defendant guilty beyond a reasonable doubt.  See United States v. Gordon, 954 F.3d 315, 327 (1st Cir. 2020).  "To establish a sufficient factual foundation for a plea," however, "the government need only show a rational basis in fact for the defendant's guilt."  United States v. Torres-Vázquez, 731 F.3d 41, 44 (1st Cir. 2013) (internal quotation marks omitted).  And the burden shifts to a defendant wishing to withdraw his guilty plea after a court accepts it; he must "show a fair and just reason for requesting the withdrawal."  Fed. R. Crim. P. 11(d)(2)(B); United States v. Flete-García, 925 F.3d 17, 23–24 (1st Cir. 2019).

Defendant Omar García-Núñez ("García") moves to withdraw his plea.  (Docket No. 35.)  He also asks for a hearing.  Id.  He asserts the government did not show a factual basis for his guilt when the plea was accepted.  Id. at pp. 7, 9.  He argues that the alleged lack of a factual basis, in tandem with his claims of innocence and the timing of his request, are sufficient reasons for permitting him to withdraw the plea.  Id. at pp. 1, 7–12.

As further discussed below, the government met its burden and García has not met his.  The motion is **DENIED**.

## I.   Background

In November 2019, García was charged with two crimes. (Docket No. 8.)  The first count charged him as a felon in possession of a firearm and ammunition in violation of 18 U.S.C. section 922(g)(1).  Id. at p. 1.  The second count charged him with possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. section 924(c)(1)(A)(i).  Id. at p. 2.  He initially pled not guilty.  (Docket No. 10.)

On January 3, 2020, García moved to change his plea to guilty. (Docket Nos. 21.)  He signed a plea agreement ten days later in which he agreed to plead guilty to the second count.  (Docket No. 24.)  The plea agreement contained, among other things, a statement of facts.  Id. at pp. 7, 10–11.  García adopted the statement of facts and acknowledged that, had the matter gone to

trial, the government would have proven the facts beyond a reasonable doubt.  Id. at p. 7.

According to the statement of facts in the plea agreement, Puerto Rico police officers executed a search warrant at García's residence on November 1, 2019.  Id. at p. 10.  In the living room, the officers seized a box with ninety-one dollars, a small container with a green leafy substance suspected of being marihuana, and an electronic scale commonly used to weigh narcotics.  Id.  In the kitchen cabinets, the officers seized a plastic container with ten blue pills and a sock with six rounds of 9mm ammunition.  Id.  In García's bedroom closet on the second floor of the residence, the officers seized the following items located close together: an "AR type pistol" without a serial number containing 27 rounds of .223 caliber ammunition; two loaded ammunition magazines—one with thirty rounds and the other with twenty rounds—matching the caliber of the firearm; and a small bag with $1778 and a drug ledger with names and quantities.  Id. at pp. 10-11.  Later that day, García told federal law enforcement officers that everything seized from the residence was his.  Id. at p. 11.

The Court held a change of plea hearing on January 13, 2020. (Docket No. 23.)  At the outset, García answered questions about his competence to plead and the voluntariness thereof.  (Docket

No. 32 at pp. 5-7.) García indicated, among other things, that he understood he was under oath, that false answers could be used in a prosecution for perjury, and that he was in court to plead guilty. Id. The Court found him competent to plead. Id. at p. 7.

The plea colloquy progressed. García acknowledged that he was waiving a number of rights by pleading guilty. Id. at pp. 8-10. García understood that he was waiving his right not to incriminate himself because the Court had to question García about what he did in order for the Court to be satisfied that García was guilty. Id. at p. 10. García also noted his comprehension of the terms of the plea agreement. Id. at p. 13. The government briefly explained the theory to be presented to prove García guilty in terms similar to those included in the plea agreement. Id. at pp. 18-20. García agreed with that explanation, confirmed that he did the things identified in the explanation, averred that he was pleading guilty of his own free will because he is guilty, affirmed that he was guilty of unlawfully possessing a firearm and ammunition in furtherance of a drug trafficking crime for which he could be prosecuted, and pled guilty. Id. at pp. 14-15, 20. The Court accepted the guilty plea. Id. at p. 21.

During the hearing, defense counsel stated that the government had provided full discovery except for one item. Id. at pp. 17-18. That item was a lab report confirming that the green

leafy substance found in García's living room was marihuana.  See
id. at pp. 4-5, 17-18.

On February 21, 2020, García requested a recording of the
change-of-plea hearing.  (Docket No. 27.)  The Court denied the
request on the same day and explained that there was no audio
recording.  (Docket No. 28.)  García then requested a transcript
of the hearing on February 24.  (Docket No. 30.)  The Court granted
the request the next day, (Docket No. 31,) and the transcript was
filed on February 28, (Docket No. 32.)

Four days later, on March 3, 2020, García moved to withdraw
his plea.  (Docket No. 35.)  The government opposed the motion.
(Docket No. 40.)

## II. Parties' Positions

### A.  García

Much of García's motion to withdraw his guilty plea
concentrates on the factual basis supporting the section 924(c)
charge.  According to García, the factual basis of his plea
"lacks: (1) the element of an underlying drug trafficking offense;
and (2) the element – and admission – that the firearm was
possesses [*sic*] in furtherance of a drug trafficking crime."
(Docket No. 35 at p. 9.)  In other words, in García's view, the
plea agreement and change-of-plea hearing established that he
possessed a firearm, but not that he committed a drug trafficking

offense or possessed the gun in furtherance of such an offense. See id. at pp. 6-11. In support of this argument, García cites four out-of-circuit cases. Id. at pp. 5-6 (citing United States v. Heid, 651 F.3d 850 (8th Cir. 2011); United States v. Maye, 582 F.3d 622 (6th Cir. 2009); United States v. Monzón, 429 F.3d 1268 (9th Cir. 2005); United States v. Bradley, 381 F.3d 641 (7th Cir. 2004); United States v. Gobert, 139 F.3d 436 (5th Cir. 1998)).

García also contends that he is factually and legally innocent of the section 924(c) charge. Id. at pp. 7, 10-11. He finds support for this notion in the alleged lack of a factual basis for the charge, as well as an asserted consistency in this position since a recorded interview after his arrest. Id.

García further argues that the timing of his withdrawal motion weighs in favor of granting the motion. Id. at p. 10. García told his counsel that he wanted to change his plea on February 20, 2020, which was the first time they spoke after the change-of-plea hearing. Id. at pp. 2, 10. According to the motion, García wanted to withdraw his guilty plea after the change-of-plea hearing but was "immediately" transferred to a new prison. Id. at p. 10. He asserts that the withdrawal motion was filed "as expeditiously as possible." Id.

Finally, García contends that the existence of the plea agreement in this case does not weigh against his motion. Id. at

p. 11.   García argues that the plea agreement is incurably
defective because it contains, according to García, an inadequate
factual basis.   Id.   "Allowing this case to proceed to sentencing
with a faulty – and likely illegal – plea agreement," García warns,
"will be a travesty of justice."   Id.

    **B.**   **Government**

      The government asks the Court to deny García's motion.
(Docket No. 40.)

      With respect to García's protestations of legal
innocence, the government responds with a number of arguments.
The government notes that, in other circuits, "'a § 924(c)(1)
conviction stands on its own even if the defendant is acquitted of
the underlying offense or the underlying offense is not charged,
so long as the government presents sufficient evidence to prove
the predicate offense as an element of the § 924(c)(1) violation.'"
Id. at p. 15 (quoting United States v. Anderson, 59 F.3d 1323,
1326 (D.C. Cir. 1995) (*en banc*)) (citing United States v. Ospina,
18 F.3d 1332, 1336 (6th Cir. 1994); Myers v. United States, 993
F.2d 171, 172 (8th Cir. 1993) (*per curiam*); United States v. Hill,
971 F.2d 1461, 1464 (10th Cir. 1992) (*en banc*); United States v.
Muñoz-Fabela, 896 F.2d 908, 911 (5th Cir. 1990); United States v.
Laing, 889 F.2d 281, 288–89 (D.C. Cir. 1989); United States v.
Hunter, 887 F.2d 1001, 1003 (9th Cir. 1989) (*per curiam*); United

States v. Wilson, 884 F.2d 174, 176–77 & 176 n.2 (5th Cir. 1989)).
The government then argues that the facts to which García agreed
in the plea agreement and the change-of-plea hearing were
substantial enough to set out the factual basis for the
section 924(c) charge.  Id. at p. 17.  The government attaches to
its opposition a lab report confirming that the green leafy
substance found in García's living room was marihuana.  Id., Ex. 1.

On timing, the government points out that García's
motion to withdraw came fifty days after his change of plea.  Id.
at p. 10.  The government also calls into doubt García's assertion
that he wanted to reverse his guilty plea after the change-of-plea
hearing but could not do so because he was "immediately"
transferred to another prison.  Id.  The government notes that
García's assertion is conclusory and contradicted by public
records showing that García was transferred twenty-two days after
the change-of-plea hearing.  Id. at pp. 10–11.

## III. Discussion

"[A] defendant has no absolute right to withdraw a guilty
plea."  United States v. Fernández-Santos, 856 F.3d 10, 15 (1st
Cir. 2017) (internal quotation marks omitted).  "A defendant may
withdraw a plea of guilty . . . after the court accepts the plea,
but before it imposes sentence if . . . the defendant can show a
fair and just reason for requesting the withdrawal."  Fed. R. Crim.

P. 11(d)(2)(B).   The burden of persuasion is on the defendant.
Flete-García, 925 F.3d at 24.

"A court's scrutiny of a plea-withdrawal motion must take
into account the totality of the relevant circumstances."   Id.
"This canvass includes consideration of whether the plea was
voluntary, intelligent, and knowing when tendered; the strength of
the reason(s) proffered in support of the motion to withdraw; the
timing of the request; and the force of any claim of actual
innocence" or legal innocence.   Id.; United States v. Caramadre,
807 F.3d 359, 366 (1st Cir. 2015); see also United States v.
Dunfee, 821 F.3d 120, 127 (1st Cir. 2016) (internal quotation marks
omitted) (characterizing the first consideration as "whether the
plea was voluntary, intelligent, knowing and in compliance with
Rule 11").   Another relevant factor is whether the parties reached
a plea agreement.   United States v. Cotal-Crespo, 47 F.3d 1, 4
(1st Cir. 1995).   "If the defendant makes a *prima facie* showing of
an entitlement to relief, the court must then factor into the
decisional calculus the prejudice, if any, that may accrue to the
government as a result of allowing the plea to be withdrawn."
Flete-García, 925 F.3d at 24.   The first set of factors—whether
the plea was voluntary, intelligent, knowing, and in compliance
with Rule 11—is the most important.   United States v. Santiago
Miranda, 654 F.3d 130, 136 (1st Cir. 2011); see Caramadre, 807

F.3d at 367 ("Rule 11 considerations are a paramount concern in a plea-withdrawal inquiry.").

"In considering a motion to withdraw a guilty plea, the district court must hold an evidentiary hearing if the defendant alleges facts which, if taken as true, would entitle him to relief." Santiago Miranda, 654 F.3d at 136 (internal quotation marks omitted). "[A] defendant is entitled to an evidentiary hearing unless the facts alleged are contradicted by the record or are inherently incredible and to the extent that they are merely conclusions rather than statements of fact." Id. at 137 (internal quotation marks omitted).

## A. The voluntary, intelligent, knowing, and Rule 11 compliant nature of García's plea

García's contentions on this score are narrow. He contends that the government did not establish the factual basis for two elements of a section 924(c) violation.[1] (Docket No. 35 at pp. 6-11.)

Federal Rule of Criminal Procedure 11(b)(3) states that "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." The rule

---

[1] García also asserts that these alleged deficiencies in his plea reveal or support his actual and legal innocence. (Docket No. 35 at pp. 7, 10-11.) And, for good measure, he notes the alleged deficiencies as supporting the strength of the reasons proffered for his motion. Id. at pp. 6-9. The Court will examine the contentions in each context.

"is designed to protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge." McCarthy v. United States, 394 U.S. 459, 467 (1969) (internal quotation marks omitted).

A factual basis for a plea requires the government to "show a rational basis in fact for the defendant's guilt." Torres-Vázquez, 731 F.3d at 44 (internal quotation marks omitted). "This showing can be achieved even if the government does not support every element of the charged crime by direct evidence"; circumstantial evidence can be enough. Id. (internal quotation marks omitted); see United States v. Ramos-Mejía, 721 F.3d 12, 16-17 (1st Cir. 2013). "After all, a Rule 11 inquiry is not designed to prove a criminal defendant's guilt beyond all doubt" or even "beyond a reasonable doubt." Torres-Vázquez, 731 F.3d at 44 (internal quotation marks omitted); Ramos-Mejía, 721 F.3d at 16. "As long as the record evinces some basis for thinking that the defendant is at least arguably guilty, no more is exigible." Torres-Vázquez, 731 F.3d at 45 (internal quotation marks omitted). "The facts relevant to this inquiry may be gleaned either from the defendant's admissions or from the prosecution's version of the evidence (to the extent that it is acknowledged by the defendant)." United States v. Jiménez, 498 F.3d 82, 86 (1st Cir. 2007).

"In order to prove possession with intent to distribute, the government must show that the defendants knowingly and intentionally possessed, either actually or constructively, a controlled substance with the specific intent to distribute." United States v. Ayala-Vázquez, 751 F.3d 1, 12 (1st Cir. 2014) (internal quotation marks omitted). "Constructive possession exists when a person knowingly has the power and intention at a given time to exercise dominion and control over an object either directly or through others." United States v. Apicelli, 839 F.3d 75, 79 (1st Cir. 2016) (internal quotation marks omitted).

"[T]he requisite knowledge and intention can be inferred from circumstances, such as a defendant's control over the area where the contraband is found (e.g., defendant's home or automobile)." United States v. McLean, 409 F.3d 492, 501 (1st Cir. 2005). "But knowledge must be fairly inferable from the circumstances." Id. "There must be some action, some word, or some conduct that links the individual to the contraband and indicates that he had some stake in it, some power over it." Id. (alteration and internal quotation marks omitted).

To determine whether a defendant had an intent to distribute drugs, the First Circuit Court of Appeals has identified several factors to consider. These include the amount of drugs, drug purity, quantity of cash on a defendant, how the drugs were

packaged, the presence of drug paraphernalia, evidence showing the
defendant used the drugs seized, and the presence of firearms.
Fernández-Santos, 856 F.3d at 19.

        Here, the government's version of the facts adopted by
García establishes the factual basis necessary to show García
engaged in a drug trafficking crime.  In García's living room, law
enforcement seized a box with cash, a small amount of marihuana,
and a scale commonly used to weigh narcotics.  See Docket No. 24
at p. 10; Docket No. 32 at pp. 18-19.  Perhaps the items were for
García's personal use, but "[a] mere possibility (say, that
[narcotics] may have been for personal use . . . ) might constitute
a plausible line of defense at trial, but such possibilities,
without more, are not enough to dissipate an intact factual basis
for a guilty plea."  Jiménez, 498 F.3d at 87.  In any case, law
enforcement also seized from García's bedroom closet a drug ledger
with names and quantities together with a large amount of money,
a loaded firearm, and two loaded ammunition magazines.  See Docket
No. 24 at pp. 10-11; Docket No. 32 at p. 19.  They also found blue
pills together with other ammunition.  See Docket No. 24 at p. 10;
Docket No. 32 at p. 19.  García admitted that everything seized
from the residence was his own.  See Docket No. 24 at p. 11; Docket
No. 32 at p. 19.  Those facts "show a rational basis in fact for
the defendant's guilt."  Torres-Vázquez, 731 F.3d at 44.

The "in furtherance of" element requires a showing that a firearm was used to advance or promote the drug crime. Specifically, "[t]o satisfy the in-furtherance requirement, the government must establish 'a sufficient nexus between the firearm and the drug crime such that the firearm advances or promotes the drug crime.'" United States v. Rodríguez-Torres, 939 F.3d 16, 30 (1st Cir. 2019) (quoting United States v. Gurka, 605 F.3d 40, 44 (1st Cir. 2010)); see United States v. Gonsalves, 859 F.3d 95, 111 (1st Cir. 2017).

The nexus required by this element is not satisfied by just any link. As Justice Souter makes clear, "the defendant must have possessed the gun in furtherance of his drug dealing, not merely in connection with his commission of a drug offense, but to advance or promote it." United States v. González-Negrón, 892 F.3d 485, 487 (1st Cir. 2018) (internal quotation marks omitted). "The mere presence of a firearm in an area where a criminal act occurs is not a sufficient basis . . . ." United States v. Robinson, 473 F.3d 387, 399 (1st Cir. 2007) (internal quotation marks omitted).

Still, the First Circuit Court of Appeals "has shown considerable latitude" in determining that the element is satisfied. United States v. Bobadilla-Pagán, 747 F.3d 26, 35 (1st Cir. 2014). And that court has "[r]ecogniz[ed] that the in

furtherance of element does not have a settled, inelastic definition." Id. (alteration and internal quotation marks omitted).

The First Circuit Court of Appeals analyzes the furtherance element from both objective and subjective standpoints. Id. "Evidence of subjective intent might include a showing that a defendant obtained a firearm to protect drugs or proceeds." Id. "Where direct evidence of subjective intent is lacking, the jury may infer intent from the objective circumstances." Id. "Objective factors the court considers include: (1) the proximity of the firearm to drugs or contraband; (2) whether the firearm was easily accessible; (3) whether the firearm was loaded; and (4) the surrounding circumstances." Id. "Possession of a firearm to protect drugs or sales proceeds can constitute possession in furtherance of a drug trafficking crime." United States v. Alverio-Meléndez, 640 F.3d 412, 420 (1st Cir. 2011) (internal quotation marks omitted).

Here, the government showed a rational basis in fact for García's guilt on the furtherance element. In García's bedroom closet, the officers found—in close proximity—a loaded pistol, two ammunition magazines loaded with 20 and 30 rounds, and a small bag with $1778 and a drug ledger with names and quantities. See Docket No. 24 at pp. 10-11; Docket No. 32 at p. 19. A loaded firearm in

close proximity to such a large sum of money and a drug ledger
shows a factual basis for the furtherance element, including
because it is rational to conclude the firearm was kept there to
protect those items.  Bobadilla-Pagán, 747 F.3d at 35; Torres-
Vázquez, 731 F.3d at 44; Alverio-Meléndez, 640 F.3d at 420.

        García cites four dissimilar cases in support of his
argument that the government failed to show a factual basis.  In
Heid, the defendant pled guilty to conspiracy to launder money,
but the record "contain[ed] no basis to reasonably determine that
she conspired with any other person to further . . . [an] illegal
purpose."  651 F.3d at 855-56.  Here, by contrast, as discussed
above, the government showed a rational basis in fact for García's
guilt.

        The other three cases cited by García, while involving
section 924(c), are even further afield.  For instance, they each
implicate circumstances in which the district court, defendant,
and defense counsel misunderstood the elements of a section 924(c)
charge.  Maye, 582 F.3d at 627-31; Monzon, 429 F.3d at 1273;
Bradley, 381 F.3d at 646.  In Maye and Monzon, moreover, the
defendant objected or questioned whether the facts stated by the
prosecution would satisfy section 924(c).  582 F.3d at 630; 429
F.3d at 1273.  Additionally, in Monzon and Bradley, the government
conceded error in the acceptance of a guilty plea without a factual

basis, 429 F.3d at 1271; 381 F.3d at 645, while in <u>Maye</u> the prosecution "failed to advance a sufficient factual basis for the defendant's guilty plea" and, in fact, "[t]he evidence highlighted by the prosecution and accepted by the district court, if anything, leads to the conclusion that the firearm was <u>not</u> possessed to advance or promote the drug trafficking offense."  582 F.3d at 631 and n.3.

García's case is not like <u>Maye</u>, <u>Monzon</u>, and <u>Bradley</u>. There was no misunderstanding in García's case as to the elements of a section 924(c) charge, and García does not allege any. Further, García never questioned or opposed anything during the change-of-plea hearing; he affirmed his guilt without reluctance. And, of course, the government in this case concedes no error as to the factual basis for the plea which, as discussed above, was sufficient.

Finally, it is notable that García does not introduce any fact relevant to whether the plea was voluntary, intelligent, knowing, and in compliance with Rule 11.  <u>See</u> Docket No. 35.  On this factor, then, there are no alleged facts to take as true that would entitle him to relief, and thus no cause for an evidentiary hearing at this juncture.  <u>Santiago Miranda</u>, 654 F.3d at 136.

**B.   The seriousness of García's claim of actual and legal innocence**

García innocence claim is remarkably slight.  His basis for asserting legal innocence is the alleged lack of a factual basis.  (Docket No. 35 at pp. 7, 10-11.)  That argument founders as discussed above.  The only support for his assertion of actual innocence is a supposed consistency in his story since his arrest.  Id.  Apparently, according to García, his statements at a recorded interview after his arrest are consistent with the view he expresses of the facts recounted in the plea agreement and at the change-of-plea hearing: "[García] admits the possession of the firearm, but does not acknowledge that it was possessed in furtherance of an underlying drug trafficking offense."  Id. at p. 7.

The matters that García's innocence claim ignores are striking.  García disputes none of the inculpatory facts to which he agreed in the plea agreement and at the change-of-plea hearing.  See Docket No. 35.  He offers no explanation for why he pled guilty.  See id.  He seems to claim to be innocent of drug trafficking, but offers no explanation for—indeed, he presents no facts related to—his possession of the drug ledger, the electronic scale, the marihuana, the blue pills, the loaded firearm, and the loaded ammunition magazines.  See id.  Similarly, he asserts that

he is innocent of possessing a firearm in furtherance of drug
trafficking, but he offers no explanation or facts concerning his
possession of the loaded firearm and two loaded ammunition
magazines in his bedroom closet in close proximity to a drug ledger
and a large sum of money.  See id.

        García's innocence claim is not credible and, even
taking the above facts as true, does not entitle him to a hearing.
For starters, it is notable that García is not saying he has
consistently asserted his innocence.   There is a meaningful
difference between a failure to admit criminal guilt and an
affirmative declaration of innocence.

        In any event, García did admit criminal guilt.   He
"affirmatively declared under oath at a properly conducted Rule 11
hearing that he was guilty of the crime[] with which he was
charged."  Flete-García, 925 F.3d at 25 (internal quotation marks
omitted); see Docket No. 32 at pp. 14-15, 20.

        To disregard in-court representations made at a change-
of-plea hearing, a defendant must typically offer "highly
specific" allegations accompanied by "independent corroboration."
United States v. Pulido, 566 F.3d 52, 59-60 (1st Cir. 2009)
(internal quotations marks omitted).   The asserted consistency in
failing to admit guilt is neither.   The consistency does nothing
to diminish the force of the facts (with which he apparently still

agrees) that, as discussed above, provide "a rational basis in fact for the defendant's guilt." Torres-Vázquez, 731 F.3d at 44. It also falls short of calling into question García's repeated assumptions of guilt at the change-of-plea hearing; as noted, he confirmed that he did the things identified in the government's explanation of the theory that would be presented at trial to prove him guilty, averred that he was pleading guilty of his own free will because he is guilty, affirmed that he was guilty of unlawfully possessing a firearm and ammunition in furtherance of a drug trafficking crime for which he could be prosecuted, and pled guilty. Id. at pp. 14–15, 20. Without a plausible basis for discounting the in-court declarations, the Court is "entitled to give weight to [García's] statements at his change-of-plea colloquy." Flete-García, 925 F.3d at 25 (internal quotation marks omitted); see also Ramos-Mejía, 721 F.3d at 16 ("Absent good cause . . . a defendant ought to be bound by the statements that he makes to the district court.").

### C.    The timing of the motion

The timing of García's withdrawal motion involves an alleged fact that improves his position. See Docket No. 35 at pp. 2, 10. Accepting his story as true weighs towards granting García a hearing because "an immediate change of heart may well

lend considerable force to a plea withdrawal request." Fernández-Santos, 856 F.3d at 18 (internal quotation marks omitted).[2]

Unfortunately for García, the timing of the motion is only one factor considered in the decision on whether to grant a request to withdraw a guilty plea. Flete-García, 925 F.3d at 24. On its own, the timing of the motion will rarely if ever entitle a defendant to withdraw his guilty plea. See United States v. Merritt, 755 F.3d 6, 11 (1st Cir. 2014) ("[T]iming alone is not enough to tip the scales."). And since none of the other factors under consideration weighs towards granting García's motion, even accepting as true his story on timing does not entitle him to the relief he seeks. Flete-García, 925 F.3d at 24; Caramadre, 807 F.3d at 367; Merritt, 755 F.3d at 11; Santiago Miranda, 654 F.3d at 136.

D. **The existence of the plea agreement**

García doubts the impact of the plea agreement based on his argument that the factual basis in the plea agreement was

---

[2] The government disputes García's account of an "immediate" transfer and provides reliable information that García was transferred twenty-two days after the change-of-plea hearing. (Docket No. 40 at pp. 10–11.) A delay of twenty-two days would weaken García's withdrawal motion. See, e.g., Fernández-Santos, 856 F.3d at 18 (noting that, in United States v. Ramos, 810 F.2d 308, 313 (1st Cir. 1987), the court "found a delay of only thirteen days weakened a defendant's motion to withdraw a guilty plea"). The Court need not hold a hearing to resolve this dispute because García is not entitled to withdraw his guilty plea even if he is correct. Flete-García, 925 F.3d at 24; Caramadre, 807 F.3d at 367; United States v. Merritt, 755 F.3d 6, 11 (1st Cir. 2014); Santiago Miranda, 654 F.3d at 136.

deficient.  (Docket No. 35 at p. 11.)  That argument fails.  The
existence of the plea agreement weighs against permitting García
to withdraw his plea.  <u>Cotal-Crespo</u>, 47 F.3d at 4.

###    E.    **The strength of the reasons offered in support of the motion**

To the extent the above discussion does not make it clear
enough that García's offered reasons for withdrawal are not
sufficiently strong, the Court summarizes here.  García's only
argument on the most critical factor—whether the plea was knowing,
voluntary, intelligent, and in compliance with Rule 11—is that the
plea lacked a factual basis.  That argument fails.  His allegations
of innocence are "conclusory," "weak and implausible."  <u>Dunfee</u>,
821 F.3d at 131 (internal quotation marks omitted).  Even accepting
as true García's assertions related to timing, that factor is not
enough to grant his request to withdraw his plea or hold a hearing.
Finally, the plea agreement in which García entered weighs against
allowing his withdrawal.  In short, considering the totality of
the circumstances, García has not "cast serious doubt"—or really
any doubt—"on the *bona fides* of the original plea."  <u>Flete-García</u>,
925 F.3d at 24; <u>United States v. McMullin</u>, 568 F.3d 1, 9 (1st Cir.
2009).

## IV.  Conclusion

For the reasons set forth above, García's motion to withdraw his guilty plea and for a hearing, (Docket No. 35,) is **DENIED**.

**IT IS SO ORDERED**.

San Juan, Puerto Rico, May 19, 2020.

<u>s/ Francisco A. Besosa</u>
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE